In re DUBLIN PROPERTIES, a Limited Partnership, Debtor.

FRANKFORD TRUST COMPANY, Plaintiff,

v.

DUBLIN PROPERTIES, a Limited Partnership, Defendant.

In re DUBLIN PROPERTIES, a Limited Partnership, Debtor.

OLNEY FEDERAL SAVINGS AND LOAN ASSOCIATION, Plaintiff,

v.

DUBLIN PROPERTIES, a Limited Partnership, Defendant.

Bankruptcy No. 80–03020G.

Adv. Nos. 81–0026G, 81–0027G.

United States Bankruptcy Court, E. D. Pennsylvania.

June 19, 1981.

John Francis Gough, Stuart F. Ebby, Toll, Ebby & Gough, Philadelphia, Pa., for plaintiff, Frankford Trust Company.

Rush T. Haines, II, Ralph Rodak, Jack B. Justice, R. Leonard Davis, III, Drinker Biddle & Reath, Philadelphia, Pa., for plaintiff, Olney Federal Savings and Loan Association.

Nathan B. Feinstein, Richard M. Squire, Cohen, Shapiro, Polisher, Shiekman & Cohen, Philadelphia, Pa., for defendants Dublin Properties, a Limited Partnership.

Andrew S. Hillman, Fidelcor, Inc., Philadelphia, Pa., for The Fidelity Bank.

## OPINION

EMIL F. GOLDHABER, Bankruptcy Judge:

The issue before us is whether a debtor in a chapter 11 case under the Bankruptcy Code ("the Code") must introduce evidence of the feasibility of a plan of reorganization in order to survive a preliminary hearing for relief from the automatic stay under § 362(e) of the Code. We conclude that, where the debtor contends that relief from the stay should not be granted because the property which is sought to be foreclosed is necessary for an effective reorganization, the debtor must offer some evidence that an effective reorganization of the debtor is realistically possible. In the case at bench, we find that the debtor has offered sufficient evidence on that issue at the preliminary hearing so that there is a reasonable likelihood that the debtor will prevail at the final hearing under § 362(d).

The facts of the case *sub judice* are as follows:[1] Dublin Properties ("the debtor") is a Pennsylvania limited partnership which was engaged in the construction of townhouses on certain real property located in Upper Dublin Township, Montgomery County ("the Tannerie Wood Subdivision"). In order to obtain financing for that project, the debtor executed and delivered, between 1977 and 1979, various notes and mortgages secured by different sections of the Tannerie Wood Subdivision to Frankford Trust Company ("Frankford") and to Founders Federal Savings and Loan Association ("Founders").[2]

The debtor allegedly defaulted on the various notes and mortgages[3] as a result of which Frankford and Founders each began

---

1. This opinion constitutes the findings of fact and conclusions of law required by Rule 752 of the Rules of Bankruptcy Procedure.

2. The notes and mortgages given to Frankford were: (1) on October 17, 1977, in the original principal amount of $2,733,250.00, secured by Phases II and III of the Tannerie Wood Subdivision; on November 16, 1979, in the original principal amount of $325,000.00, secured by Phases V and VI; on November 16, 1979, in the original principal amount of $200,000.00, secured by Phases II and III. The note and mortgage given to Founders was on July 25, 1979, in the original principal amount of $1,250,950.00, secured by Phase V. Each of the mortgages was duly recorded.

3. The debtor admitted that it failed to make the interest payments to Frankford and Founders which came due in early 1980. However, the debtor asserts that, because under the construction loan agreements Frankford and Founders were permitted to advance money in order to make the interest payments and because they had consistently done so in the past, the failure of Frankford and Founders to do so in early 1980 was in bad faith and excused the failure of the debtor to make those interest payments.

foreclosure proceedings by confessing judgments against the debtor and issuing writs of execution thereon.[4] Subsequently, on August 28, 1980, Frankford entered into possession of the Tannerie Wood Subdivision.

On November 17, 1980, the debtor filed a petition for a reorganization under chapter 11 of the Code. Thereafter, on January 12, 1981, Frankford and Olney each filed complaints for relief from the automatic stay provisions of § 362(a) of the Code to permit them to proceed with the enforcement of their liens on the Tannerie Wood Subdivision. Those complaints were consolidated for the purpose of trial and preliminary hearings thereon were held on four separate trial dates (March 9, 18, 23 and 30) during which time considerable evidence was introduced by all parties.[5] At the end of the fourth day of the preliminary hearings, we held this case under advisement and requested briefs on the issue of whether the debtor was obliged to offer evidence of the feasibility of any plan or reorganization which it would be proposing in the chapter 11 case and, if so, whether the debtor herein had offered sufficient evidence on that point to survive the preliminary hearings.

The Code provides in § 362(e) that, at the conclusion of a preliminary hearing thereunder, the bankruptcy court shall order the stay continued "if there is a reasonable likelihood that the party opposing relief from the stay will prevail at the final hearing under subsection (d) of this section."

Under § 362(d) of the Code, a party is entitled to relief from the stay:

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or

(2) with respect to a stay of an act against property, if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.

Section 362(g) apportions the burden of proof in stay litigation by providing that the party opposing the request for relief from the stay has the burden of proof on all issues except the issue of the debtor's equity in the property. Thus, in order to continue the automatic stay after the preliminary hearing there must be a reasonable likelihood that the one opposing the relief (the debtor in the instant case) will be able to carry its burden of proof on all issues except the issue of the debtor's equity in the property.

In this case extensive evidence was offered at the preliminary hearing by both parties. Frankford and Olney offered evidence of the amounts due on their notes and mortgages as well as testimony of the value of the various sections of the Tannerie Wood Subdivision in order to establish that the debtor lacks equity in the property on which the lenders have liens. Frankford and Olney also offered evidence on the issue of the lack of adequate protection of their interests in the property.

Founders,—which by merger, was succeeded by Olney Federal Savings & Loan Association ("Olney"),—also asserted herein that the debtor had defaulted on the construction loan agreement by abandoning work at the site in October or November of 1979. The debtor asserts, however, that that abandonment was a result of the failure of Frankford and Founders to advance any more money as required by the construction loan agreements.

4. The judgments entered by Frankford on August 29, 1980, were on its first two mortgages, *see* note 2 *supra*, and were for $850,587.18 and $380,766.89, respectively. The judgment entered by Founders on November 3, 1980, was for $882,521.83.

5. At the conclusion of each hearing, the attorney for Frankford insisted that it be considered as a preliminary hearing and that we make the determination required by § 362(e) that the debtor had established the reasonable likelihood that it would succeed at the final hearing. We held that the debtor should be given the opportunity to present all the evidence it wished at the preliminary hearings before we made such a determination. Consequently, the preliminary hearings were continued (with the stay still in effect) after each of the four hearings.

For its part the debtor offered extensive evidence to support its argument that it had equity in the property. The debtor's evidence on that issue consisted of testimony of the fair market value—on completion—of the 26 townhouses which are presently in various stages of completion, minus the cost to complete those townhouses. With respect to the rest of the property in the Tannerie Wood Subdivision (4 improved lots and 36 semi-improved lots), the debtor offered testimony of both the fair market value if completed, minus the cost to complete, as well as the fair market value if those lots were sold as is. In addition, to support its contention that the property is necessary for the debtor's effective reorganization, the debtor offered evidence that the Tannerie Wood Subdivision is the only property which the debtor owns.

■ On the issue of whether—at a preliminary hearing under § 362(e)—the debtor must offer evidence of the feasibility of any plan it may propose, we conclude that where a successful plan is a necessary element of the debtor's proof under §§ 362(d) and (g), the debtor must present some evidence that such a plan will be achievable. In the instant case we find that the debtor's defense of this § 362(d) complaint depends on a successful plan of reorganization for two reasons. Firstly, the debtor's evidence on the issue of the value of the Tannerie Wood Subdivision is dependent on the debtor's completion of at least the partially finished portion of that project. Secondly, the debtor has asserted that the Tannerie Wood Subdivision is necessary for its effective reorganization. Several courts have held, correctly we believe, that in order for property to be necessary for an effective reorganization of a debtor it must be demonstrated that an effective reorganization is possible. If no reorganization of a debtor is feasible, then no property of that debtor can be necessary for that end. See, e. g., In re Riviera Inn of Wallingford, Inc., 7 B.R. 725 (D.Conn.1980); In re Gilece, 7 B.R. 469 (E.D.Pa.1980); In re Hutton-Johnson Co., Inc., 6 B.R. 855 (S.D.N.Y.1980); In re Hanson Dredging, Inc., 6 B.R. 230 (S.D.Fla. 1980); In re Johnson, 6 B.R. 100, 3 C.B.C.2d 10, Bankr.L.Rep. (CCH) ¶ 67,708 (S.D.Fla. 1980); In re Princess Baking Corp., 5 B.R. 587, 6 B.C.D. 842, 2 C.B.C.2d 1071 (S.D.Cal. 1980); In re Anchorage Boat Sales, Inc., 4 B.R. 635, 6 B.C.D. 495, 2 C.B.C.2d 348 (E.D. N.Y.1980); In re Antilles Yachting, Inc., 4 B.R. 470, 6 B.C.D. 616, 2 C.B.C.2d 398 (D.V. I.1980); In re Aries Enterprises, Ltd., 3 B.R. 472, 6 B.C.D. 280, 1 C.B.C.2d 1069 (D.D.C.1980); In re Terra Mar Associates, 3 B.R. 462, 6 B.C.D. 150 (D.Conn.1980); In re Castle Ranch of Ramona, Inc., 3 B.R. 45, 5 B.C.D. 1386 (S.D.Cal.1980).

■ Looking to the proof presented by the debtor herein at the four days of preliminary hearings held in this case, we find that the debtor has presented enough evidence as to the possibility of its successful reorganization to present a "reasonable likelihood" that it would prevail at a final hearing under § 362(d). The proof offered on this point by the debtor included testimony of the person who had been acting for the debtor at the construction site for some period prior to the filing of the petition under chapter 11. That witness testified as to the cost to complete various parts of the project, the possibility of getting the present subcontractors to continue the job at the previous prices and the possibilities for financing the remainder of the job (by selling part of the property "as is", by conventional financing through another general contractor). The debtor also offered evidence through the testimony of a construction contractor who indicated that he would be willing and able to obtain financing to complete at least part of the Tannerie Wood Subdivision on terms which, according to his figures, would repay Frankford and Olney in full and realize a profit for the debtor and its estate. Additional evidence was offered through the testimony of a real estate broker who echoed the debtor's estimate of the value of the project and who stated that he would be willing to participate in any plan of the debtor's to complete and sell the townhouses.

From all of the evidence produced by the debtor herein, we are unable to conclude—

as did the bankruptcy courts in the above cited cases—that there is no likelihood that the debtor will be able to effectuate a successful plan of reorganization. We find, instead, that the debtor has several possibilities available to it that could result in a successful plan of reorganization. Furthermore, the debtor has offered the supporting testimony of several persons on this issue which in our view demonstrates that the debtor's alternatives are more than a mere financial pipe dream. On the contrary, we conclude that the evidence presented is enough to show that there is a "reasonable likelihood" that the debtor will prevail under § 362(d). To show such a reasonable likelihood we do not require that a debtor demonstrate that it has actually proposed a plan of reorganization acceptable to its creditors. It must only demonstrate that there is a reasonable probability that it will be able to propose a plan that will result in its successful reorganization. This we find the debtor has done.

Accordingly, we will continue the automatic stay pending the final hearing as scheduled in the accompanying order.