In re CLARK TECHNICAL ASSOCIATES, LTD., Debtor.

The FIRST CONNECTICUT SMALL BUSINESS INVESTMENT COMPANY, Plaintiff,

v.

CLARK TECHNICAL ASSOCIATES, LTD., Defendant.

Bankruptcy No. 5–80–000467.
Adv. No. 205–5–81–0011.

United States Bankruptcy Court,
D. Connecticut.

March 3, 1981.

Goldman & Rosen, P. C., Bridgeport, Conn., for plaintiff.

Allan M. Cane, Fairfield, Conn., for debtor.

### DECISION ON APPLICATION TO LIFT AUTOMATIC STAY

HOWARD SCHWARTZBERG, Bankruptcy Judge.*

The debtor in this Chapter 11 case affirmatively asserts its lack of equity in the property in question as a reason for continuing the automatic stay under Code § 362 on the novel theory that the difference between the secured debt and the value of the property is so great that the secured creditor does not have anything to lose by a continuance of the stay.

### FINDINGS OF FACT

1. On June 6, 1980, an involuntary petition for relief under Chapter 7 of the Bankruptcy Code was filed against the above-named debtor. An order for relief was entered on August 5, 1980. Six days later

* U.S.B.J., Southern District of New York, sitting by designation of the Chief Judge, United

the debtor converted the liquidation case to a reorganization case under Chapter 11 pursuant to Code § 706(a).

2. The debtor is a corporation located in Bridgeport, Connecticut, engaged in the manufacturing and sale of magnesium handtrucks and related parts. It is also engaged in the conversion and sale of scrap aluminum into aluminum ingots. It operates out of a one story building which it owns in an area in Bridgeport, Connecticut which is zoned for light industry. To the rear of this building is an out building which is also owned by the debtor and is in poor condition as a result of a fire some years ago. The debtor uses this structure as a foundry, a prohibited heavy industrial use.

3. The plaintiff, First Connecticut Small Business Investment Company, holds two mortgages on the real estate owned by the debtor out of which it operates its business. One mortgage amounts to $40,500.86, inclusive of principal and interest; the other totals $143,301.81, inclusive of interest and principal, for an aggregate secured debt owed to the plaintiff of $183,852.67. Additionally, there are four encumbrances junior to the plaintiff's mortgages as follows: A mortgage owed to the Connecticut Bank & Trust Company of $30,000; a $2,865.06 tax lien in favor of the Federal Government; two tax liens owed to the City of Bridgeport amounting to $1,567.41 and $1,788.52. Thus, the encumbrances against the property in question total $220,073.66.

4. The plaintiff's appraiser testified that he values the property in question as worth $110,000 at its highest and best use. The debtor offered no evidence to dispute this valuation.

5. The debtor's vice president and controller testified that the debtor could not stay in business if it lost its real estate because the foundry could not be relocated readily. However, he said that the debtor's records are not conducive to proper reporting and that its efforts have been directed

States Court of Appeals, Second Circuit.

mainly towards manufacturing while neglecting its marketing functions. He stated that they are operating this business as one would run a corner store; "you can't do this at a profit."

6. The debtor has filed a plan of reorganization which contemplates no infusion of outside capital; the funds from the debtor's future business operations are expected to generate the wherewithal to consummate the plan. The debtor proposes to pay secured creditors 30% of their outstanding interest as of August 1, 1981, at which time the moratorium will end and the debtor will begin to pay current scheduled secured obligations at approximately $5000 per month. The debtor also proposes to pay unsecured creditors 20% of the filed claims, beginning August 1, 1981. The debtor further proposes to pay accrued dividends owed to preferred stockholders in ten installments commencing August 1, 1981, with current dividend payments to commence on August 15, 1981.

7. There is no evidence that the debtor's operations will turn around and generate sufficient profits to fund the plan of reorganization, assuming that the debtor can satisfy the requirements for confirmation under Code § 1129.

8. The debtor has not offered any additional protection to the plaintiff because it maintains that the secured encumbrances against the property in question exceed twice the value of the property, so that the plaintiff has nothing to lose by a continuance of the stay.

## DISCUSSION

If, under Code § 506(a), the plaintiff's secured claims under its two senior mortgages were valueless because the property securing them had no value or because the value was eaten up by senior encumbrances, there would then be some merit to the debtor's argument that the automatic stay should continue as to the plaintiff because it had nothing further to lose. In such case the plaintiff would have no property interest requiring adequate protection under Code § 362. However, the secured property has an undisputed value of $110,000 and plaintiff's secured interest is senior to all other encumbrances. That the plaintiff chose to advance over $164,000 principal amount against property valued at $110,000 does not mean that the court should now disregard plaintiff's right to look to its security in order to recapture a part of its overdue claim. Since the plaintiff's claims are secured by property of some value, the plaintiff is entitled to the protection afforded secured creditors under Code § 362 when considering relief from the automatic stay.

The plaintiff has satisfied its burden of proof under Code § 362(g)(1) when it established that the encumbrances against the property in question amount to $220,073.66, whereas the value of the property was only $110,000. Thus, the debtor utterly lacks equity in the property.

The debtor, on the other hand, failed to satisfy its burden of proof, imposed under Code § 362(a)(2), as to all other issues under Code § 362(d). It is not enough for a debtor to argue that the automatic stay should continue because it needs the secured property in order to propose a reorganization. If this were the test all property held by debtors could be regarded as necessary for the debtors' reorganization. The key word under Code § 362(d)(2)(B) is "effective"; the property must be necessary to an effective reorganization. If all the debtor can offer at this time is high hopes without any financial prospects on the horizon to warrant a conclusion that a reorganization in the near future is likely, it cannot be said that the property is necessary to an "effective" reorganization. *In re Terra Mar Associates*, 3 B.R. 462 (Bkrtcy.B.C. Conn.1980); *In re Riviera Inn of Wallingford, Inc.*, 7 B.R. 725, C.C.H. ¶ 67,726 (Bkrtcy.B.C.Conn.1980); *In re Hutton-Johnson Co. Inc.*, 6 B.R. 855 (Bkrtcy.S.D.N.Y. 1980). In this case the debtor has no offer of outside capital; it hopes to increase its marketing prospects so that sufficient future sales may generate the funds necessary to fund the plan. Financing might suffice if the debtor's past history or established future prospects justify this method.

However the debtor's boots are too thin to support the proposed financial restructuring in the light of current marketing conditions. As viewed by the debtor's vice president, they have not even penetrated the market for magnesium handtrucks. Additionally, their modest sales of aluminum ingots do not approach their projected expectations. In other words the debtor is operating like a corner store but is saddled with the secured indebtedness of a heavy industrial manufacturer.

In the circumstances of this case the court has no discretion when the plaintiff, as the senior secured creditor, requests relief from the automatic stay. The plaintiff's secured interest is not adequately protected and the debtor has not offered any additional protection. It is not for the court to determine what will constitute adequate protection of the secured creditor's interests; the debtor must affirmatively propose protection of the secured interest, and this the plaintiff has not done. *In re San Clemente Estates*, 5 B.R. 605, 6 B.C.D. 838 (Bkrtcy.S.D.Calif.1980); *In re Riviera Inn of Wallingford, Inc.*, supra; *In re Hutton-Johnson Co. Inc.*, supra.

Since the debtor does not have any equity in the property in question, as required under Code § 362(d)(2)(A), and since the property is not necessary to an "effective" reorganization within the meaning of Code § 362(d)(2)(B) because no reorganization currently appears likely, this court must lift the automatic stay. Code § 362(d) provides that in such circumstances "the court *shall* grant relief from the stay . . .". [Emphasis added]

### CONCLUSIONS OF LAW

1. The plaintiff's property interest is not adequately protected for the purpose of maintaining the automatic stay.

2. The plaintiff has sustained its burden of proving that the debtor lacks equity in the property in question, as required under Code § 362(d)(2)(A), and the debtor has not shown that an effective plan of rehabilitation is likely.

3. The plaintiff is entitled to an order relieving it from the consequences of the automatic stay imposed under Code § 362.